J. A. JONES CONSTRUCTION CO.,
Plaintiff-Appellee,

and

Bechtel Power Co.,
Intervenor-Plaintiff-Appellee,

v.

PLUMBERS AND PIPEFITTERS
LOCAL 598 et al.,
Defendants-Appellants.

Nos. 76–3623 and 77–1053.

United States Court of Appeals,
Ninth Circuit.

Feb. 6, 1978.

Michael E. de Grasse of Critchlow, Williams, Ryals & Schuster, Richand, Wash., for defendant-appellant in 77–1053.

Hugh Hafer of Hafer, Cassidy & Price, Seattle, Wash., for defendant-appellant in 76–3623.

William R. Squires, III, Seattle, Wash., for plaintiff-appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and SMITH,* District Judge.

HUFSTEDLER, Circuit Judge:

J. A. Jones Construction Co. ("Jones") sought to enjoin, pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) fourteen unions from sympathy work stoppage allegedly in violation of the collective bargaining agreements between the parties. The district court granted Jones' motion for a temporary restraining order, and Jones posted a $5,000.00 surety bond. Seven days later, Jones moved for a voluntary dismissal without prejudice and for exoneration of the bond; the unions cross-moved for award of costs and attorneys' fees pursuant to Section 7(e) of the Norris-LaGuardia Act (29 U.S.C. § 107(e)). The district court granted Jones' motion, denied the unions' motion, and the unions appeal. The principal issue is whether the district court erred in refusing to apply *Buffalo Forge*, which came down after the restraining order had issued, but before the court ruled on the unions' motion. We answer affirmatively.

The appellants are unions whose members are the building and construction workers at Hanford Atomic Reservation, a nuclear energy research facility operated by the United States Energy Research and Development Administration. Jones is a construction contractor at the Hanford site. On April 30, 1976, the Hanford Atomic Metal Trades Council ("HAMTAC") placed picket lines at the Hanford site after contract negotiations with the Atlantic Richfield Hanford Company ("ARHCO"), an operating contractor, reached an impasse. The unions' members honored the HAMTAC picket lines and did not report to work, even though Jones was not a party in the HAMTAC–ARHCO negotiations and was not a target of the strike. After un-

---

* Honorable Russell E. Smith, Chief Judge, United States District Court, District of Montana, sitting by designation.

successfully seeking assistance from the unions' representatives to end the work stoppage, Jones, on May 4, 1976, applied to the district court for a temporary restraining order and injunctive relief. Jones alleged collective bargaining agreements between it and the unions, an illegal work stoppage, and failure by the unions to demand and to comply with arbitration procedures. The district court orally granted the restraining order and set a $5,000.00 bond on May 4, 1976, after hearing testimony from a witness for Jones. Counsel 'for Sheet Metal Workers Local 242 ("Sheetmetal") and Electrical Workers Local 112 ("Electrical") were present at that hearing.

On May 10, 1976, the date on which the restraining order expired, the district court orally stated in a hearing on the preliminary injunction that injunctive relief may no longer be necessary because the work stoppage had ended. Evidence then revealed that Sheetmetal had, but Jones had not, signed the collective bargaining agreement between them and that a subcontractor, not Jones, had a collective bargaining agreement with Electrical. The hearing was continued to the next day, when Jones moved for voluntary dismissal without prejudice and exoneration of the bond; the unions opposed the motion and cross-moved for award of costs and attorneys' fees under Section 7(e) of the Norris-LaGuardia Act. On September 21, 1976, the court entered judgment granting Jones' motion and denying the unions' motion.

The unions contend that the district court erred in refusing to consider the impact of *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), which came down on July 6, 1976, on the propriety of the restraining order earlier issued. The district court stated: "While *Buffalo Forge* is relevant to the underlying dispute in this case the opinion has no bearing on whether the temporary restraining order was correctly or incorrectly issued because the *Buffalo Forge* opinion was rendered after this Court's ruling. The propriety of the temporary restraining order must be judged according to the current state of the law when the ruling was made." The unions also contend that since Jones moved for voluntary dismissal of its complaint for injunctive relief, it admitted that the restraining order was erroneously or improvidently issued. Two of the appellants, Sheetmetal and Electrical, further contend that the restraining order was erroneously issued as to them because they had no valid or enforceable collective bargaining agreements with Jones.

■ An injunction bond in a *Boys Market*[1] proceeding is payable if the injunctive relief is found to have been improvidently or erroneously issued in a labor dispute not covered by the grievance-arbitration provision of the collective bargaining agreement. (*E. g., United States Steel Corp. v. United Mine Workers of America*, 456 F.2d 483, 488 (3rd Cir. 1972).)

■ The fact that Jones voluntarily dismissed its complaints for preliminary and permanent injunction does not conclusively establish that the restraining order was wrongfully issued. Jones' voluntary dismissal is a confession that it has no right to a preliminary or a permanent injunction (*Janssen v. Shown*, 53 F.2d 608, 611 (9th Cir. 1931),) but it is not a confession that the restraining order was erroneously or improvidently issued. The restraining order may have rendered further injunctive relief unnecessary and the issue moot, as the district court found here. A contrary rule would have the undesirable effect of prolonging expensive litigation which serves no useful purpose.

■ The fact that Jones had not yet signed its collective bargaining agreement with Sheetmetal does not conclusively establish that the restraining order was wrongfully issued because failure of one of the parties to sign the agreement does not

---

1. *Boys Market, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 196 (1970) (notwithstanding the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, district court may enjoin strikes under narrow conditions).

necessarily prevent the nonsigning party from being bound by the agreement. "That [a party] failed to sign the agreement is immaterial for any written contract though signed only by one of the parties binds the other if he accepts it and both act in reliance on it as a valid contract." (*NLRB v. Local 825, International Union of Operating Engineers*, 315 F.2d 695, 699 (3rd Cir. 1963). *See also United Steelworkers of America v. CCI Corp.*, 395 F.2d 529 (10th Cir. 1968).)

■ However, the district court should have examined the propriety of the restraining order issued against the unions in the light of the Supreme Court's decision in *Buffalo Forge, supra*, before ruling upon the motions. The refusal to do so is contrary to the general rule that federal courts must take into account new and supervening rules of decision as long as the action is *sub judice*. (*E. g., Vandenbark v. Owen-Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); *Grow v. Smith*, 511 F.2d 1146 (9th Cir. 1973); *Jarrett v. Resor*, 426 F.2d 213 (9th Cir. 1970).)

■ Under *Buffalo Forge, supra*, the restraining order against Electrical was wrongfully issued because Jones did not have a collective bargaining agreement with Electrical even though its subcontractor did have the agreement. Without a collective bargaining agreement, Jones could not have promised Electrical to submit their disputes to binding arbitration, the necessary *quid pro quo* for the union's promise not to strike over issues that were subject to the arbitration machinery. (*Buffalo Forge, supra*, 428 U.S. at 407, 96 S.Ct. 3141.) This fatal defect cannot be cured by the subcontractor's after-the-fact authorization to Jones to proceed on its behalf because Jones did not thereby undertake any binding obligation to arbitrate with Electrical.

With respect to the appellants, other than Electrical, the crucial issue is whether their underlying disputes with Jones were over issues subject to the mandatory arbitration provisions of their collective bargaining agreements. This finding is necessary to determine whether the *quid pro quo* for the unions' express or implied promise not to strike was present. In the absence of such consideration from Jones, a strike could not be enjoined. In *Buffalo Forge, supra*, the parties stipulated to the fact that the picket lines there were *bona fide*, primary, and legal, and that the union had authorized and directed the sympathy work stoppage. (*Id.* at 403, 96 S.Ct. 3141.) From these facts, the *Buffalo Forge* Court concluded that "the [sympathy] strike was not over any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract." (*Id.* at 407, 96 S.Ct. at 3147.)

On the incomplete and fragmentary record before us, we are unable to say whether the necessary *Buffalo Forge* requirements were met. Collective bargaining agreements with Millwrights Local 1699 and Teamsters Local 839, two of the appellants, do not appear in the exhibits. Some of the collective bargaining agreements do not expressly contain a mandatory arbitration provision or a no-strike clause and some refer to other documents which do not appear in the record. These agreements were not and could not have been drafted with *Buffalo Forge* in mind. The district court made no findings as to whether the HAMTAC picket lines at the Hanford site were primary, *bona fide*, and legal, or whether the appellants played any role in the work stoppage by their members. These findings are needed to decide whether the underlying disputes are over issues subject to the contract settlement procedures. To be sure, the hearings on the temporary restraining order and the preliminary injunction were conducted under emergency conditions, and no one had the benefit of *Buffalo Forge*. The result is that crucial factual findings for a proper disposition of the matter before us are absent.

We do not reach the question whether the award for costs and attorneys' fees may exceed the amount of an injunction bond posted pursuant to Section 7 of the Norris-

LaGuardia Act in advance of a determination by the district court on the liability issue.

With respect to Electrical, the order is reversed and the cause is remanded for a determination of the amount of costs and attorneys' fees incurred in defense of the restraining order. With respect to the remaining appellants, the order is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.