**TUDOR FASHIONS LTD., a New York Corporation, and David Meryl, Inc., a New York Corporation, Plaintiffs,**

**v.**

**Edgar ROMNEY, as Manager of Blouse, Skirt & Sportswear Workers' Union, Local 23–25, International Ladies Garment Workers' Union, Defendants.**

**No. 86 Civ. 3163 (GLG).**

United States District Court, S.D.  New York.

May 5, 1986.

Stephen H. Kahn, New York City, for plaintiffs.

Chaikin & Chaikin, P.C., New York City, for defendants; Eric B. Chaikin, of counsel.

## OPINION

GOETTEL, District Judge:

The plaintiffs in this action, Tudor Fashions Ltd. ("Tudor") and David Meryl, Inc. ("David Meryl") seek what is commonly known as a *Boys Markets* injunction, enjoining the defendant Blouse, Skirt & Sportswear Workers' Union, Local 23–25, International Ladies Garment Workers Union ("the Union") from striking or otherwise interfering with the business of the plaintiffs. The Court is now prepared to rule on this matter, both parties having declined the Court's invitation to hold an evidentiary hearing. The plaintiffs' request for injunctive relief is denied pursuant to the Court's findings of fact and conclusions of law that follow.

### I. Findings of Fact

Except where otherwise noted, the following facts are not in dispute.

### A. The Parties and the Collective Bargaining Agreement

Tudor is a New York corporation that for many years engaged in the manufacture and sale of garments. Although Tudor has not manufactured or sold garments within the past year, it hopes to resume production and sales in the future. Plaintiff David Meryl is another New York corporation in the apparel business. The Union is an unincorporated labor organization with offices in the state of New York.

For many years, Tudor and the Union have been parties to successive collective bargaining agreements which regulate the terms and conditions of employment of those Tudor employees whom the Union represents. Their current collective bargaining agreement ("the Agreement") expires on May 1, 1988.

Article 44 of the Agreement provides that, "[a]ll complaints, disputes, claims or grievance between ..." the Union and Tudor "or any of its subsidiary auxiliary and affiliated firms or their successors and assigns ... that directly or indirectly arise under, out of or in connection with or in any manner relate to or involve questions or interpretation or application of any ARTICLE of this agreement or any of the acts, conduct or relations between them ..." shall be resolved through a multi-step grievance procedure culminating in final and binding arbitration. Affidavit of Albert S. Lewis, Exhibit A at 52. The Agreement also contains a so-called "no-strike clause," that prohibits a "strike, stoppage or lockout" during the term of the Agreement. *Id.* at 50. This prohibition applies during the pendency of an arbitration proceeding, but does not apply in favor of a party who does not comply with a decision of the arbitrator within twenty-four hours of rendition. *Id.*

### B. The Underlying Dispute

In mid–1985, the Union learned that David Meryl and Tudor had exhibited several indicia of close affiliation. David Meryl's owners and officers were the son and grandson of Tudor's owner, and many of David Meryl's employees were former Tudor employees. Based on this and other information, the Union demanded that Tudor acknowledge David Meryl as its subsidiary, auxiliary, or affiliate bound by the terms of the Agreement pursuant to Article 8 which states that "[s]ubsidiary, auxiliary, and affiliated firms or corporations of [a corporation bound by the Agreement] shall, for purpose of this agreement be ... bound by all of the terms of this agreement. *Id.* at 6. Both Tudor and David Meryl emphatically denied any such connection to the other. The Union then commenced an arbitration against Tudor and David Meryl alleging that David Meryl was Tudor's alter-ego or affiliate. All parties concede that this dispute is arbitrable under the second paragraph of Article 8 of the Agreement, which states that "[t]he Impartial Chairman shall have the right to determine whether any firm or corporation is a subsidiary, auxiliary or affiliate of an Employer...."

### C. The Arbitration Proceedings

A dispute over the scope of discovery available against David Meryl has thus far

delayed the progress of the arbitration proceedings. On August 28, 1985, the Union served David Meryl with a subpoena demanding production of any books and records that would bear on the issues before the arbitrator. At a September 5, 1985 hearing before the arbitrator, David Meryl appeared by counsel and moved to quash the subpoena. On September 12, 1985, the arbitrator issued an "interim determination" in which he found that "the Union ... [had] demonstrated a relationship between Tudor and David Meryl sufficient to warrant an examination of the David Meryl, Inc. books and records for evidence material and relevant to the issues in this proceeding." Affidavit of Arthur Lewis, Exhibit D at 8. Since the "evidence adduced thus far raise[d] a real possibility that [an alter-ego or affiliate] relationship may in fact exist," *id.*, the arbitrator concluded that a subpoena for certain books and records was warranted. However, he declined to sanction the breadth of the subpoena already issued and instead outlined the scope of an allowable subpoena. Counsel for the Union then issued a new subpoena to which Meryl again refused to comply. The Union thereafter successfully moved in the Supreme Court of the State of New York for an order enforcing compliance with the revised subpoena. *See Romney v. David Meryl, Inc.*, No. 13081/84, slip op. (Sup.Ct.N.Y.County Jan. 28, 1986). David Meryl has, nevertheless, failed to comply with the revised subpoena, contending that the Union, until one week ago, had not met its statutory obligation of serving an order on David Meryl.

### D. The Strike

On April 15, 1986, the Union began picketing in front of David Meryl. During business hours, at least four Union picketers patrol in front of the freight entrance. The picketers carry signs, at least some of which convey the message that the Union is on strike against Tudor, which is doing business as David Meryl. Aside from these signs the Union has taken no other action against Tudor, which, by its own admission, is not currently in business.

In affidavits submitted to this Court, the Union and David Meryl trade charges and countercharges concerning violence on the picket line. In addition, the Union acknowledges that it has asked companies and individuals doing business with David Meryl to honor the picket line and to abstain from doing any business with David Meryl. Various of these companies have ceased doing business with David Meryl although, in a letter to the Court dated April 30, 1986, the Union informed the Court that one such company, Modern Modes, Inc., had released goods which it had manufactured for David Meryl but was holding for delivery at the Union's behest.

All parties express a continued willingness to arbitrate their dispute. In his affidavit, Edgar Romney, Manager of the Union, states that "[o]nce the Union receives and examines the subpoenaed books, the Union intends to pursue its arbitration rights...." Affidavit of Edgar Romney ¶ 15. David Meryl's president states in his affidavit that "[David Meryl] continues to be willing to appear at arbitration proceedings which concern [it]." Affidavit of David Lewis ¶ 14. Tudor is plainly willing to arbitrate its dispute.

### E. The Proceedings Herein

On April 21, 1986, the plaintiffs moved by order to show cause to preliminarily enjoin the Union from picketing or otherwise interfere with the business of either David Meryl or Tudor. At that time, the Court declined to sign the temporary restraining order submitted by the plaintiffs and set the matter down for April 28, for a hearing on the application for injunctive relief. At the hearing, the Court inquired whether the parties wished to schedule an evidentiary hearing. The Court also asked the plaintiffs whether they wished to respond to the defendant Union's memorandum and affidavit in opposition, served and filed only minutes before the April 28 hearing. Although both parties declined the Court's offer of an evidentiary hearing, the plaintiffs did request an opportunity to re-

spond by letter to the defendant's submissions. The Court received that response in the afternoon of May 1.

## II. Discussion

### A. The Positions of the Parties

The plaintiffs ask this Court to invoke its authority under *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) ("*Boys Markets*") to enforce the Agreement's no-strike clause and enjoin the Union from picketing or otherwise interfering with the business of either plaintiff. The Union takes several tacks in response. As to Tudor, it contends that Tudor is no longer operating and that the Union cannot and has not taken any action against Tudor. Moreover, even if Tudor were operating, the Union notes that it would not strike Tudor so long as Tudor complies with all determinations and judgments of the arbitrator. As to David Meryl, the Union first argues that the Agreement's no-strike clause does not bind the Union with respect to David Meryl, a non-signatory. The Union also asserts that the plaintiffs have not satisfied several of the equitable prerequisites to the issuance of *Boys Markets* injunctive relief. Because we find that a court may not, in this case, enforce a no-strike clause against a party that has not yet been found to be bound by the Agreement containing that clause, we decline to grant the requested *Boys Markets* injunction.

### B. Conclusions of Law

■ This Court has subject matter jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982).[1]

In *Boys Markets*, the Supreme Court carved out an exception to the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104 (1982).[2] The Court held that where a collective bargaining agreement contains a mandatory arbitration procedure and the Union strikes over an arbitrable grievance, the District Court may enjoin the strike if principles of equity so warrant. Animating the decision in *Boys Markets* was the recognition that "arbitration agreements with their attendant no-strike provisions" are "a vital element of stable labor-management relations." *Id.* at 249, 90 S.Ct. at 1591–92. If an employer could not enforce the Union's contractual obligation not to strike, employers would have insufficient incentive to enter into arbitration agreements. *See United Parcel Service, Inc. v. Local 804*, 698 F.2d 100, 104 (2d Cir.1983). On the other hand, "[n]o obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). Thus, when an employer seeks *Boys Markets* injunctive relief, "the court must first find that both parties are contractually bound to arbitrate the dispute...." *New York Telephone Co. v. Communications Workers*, 445 F.2d

---

**1.** Section 301(a) provides,

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1982). A dispute over whether a no-strike clause prohibits a particular work stoppage can always form the basis for federal jurisdiction under section 301(a). *Jacksonville Bulk Terminals, Inc. v. International Longshoreman's Association*, 457 U.S. 702, 710, 102 S.Ct. 2672, 2679, 73 L.Ed.2d 327 (1982).

**2.** 29 U.S.C. § 104 provides, in pertinent part, that

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute from doing, whether singly or in concert, any of the following acts:
> (a) Ceasing or refusing to perform any work or to remain in any relation of employment....

39, 50 (2d Cir.1971); *J.A. Jones Construction Co. v. Plumbers and Pipefitters Local 598*, 568 F.2d 1292, 1295 (9th Cir.1978).

### 1. David Meryl

All agree that the underlying dispute concerning David Meryl's status is arbitrable. *See Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) (before *Boys Markets* relief will issue, underlying dispute must be found arbitrable). Equally plain is that David Meryl is not a signatory to the Agreement and is not contractually bound to arbitrate this dispute. "Without a collective bargaining agreement, [David Meryl] could not have promised [the Union] to submit their disputes to binding arbitration, the necessary *quid pro quo* for the union's promise not to strike over issues that were subject to the arbitration machinery." *J.A. Jones Construction Co., supra*, 568 F.2d at 1295. The Union's no-strike pledge will not apply to David Meryl until David Meryl is found to be bound by the Agreement. Absent such a finding, a *Boys Markets* injunction will not issue.

It does not follow that because David Meryl has appeared before the arbitrator, the Union is bound not to strike David Meryl. An after-the-fact submission to the arbitration clause in the Agreement cannot establish the Union's intent to be bound by a reciprocal no-strike obligation. Moreover, even if David Meryl could bind the Union by itself agreeing to arbitrate, the Union's obligation could not yet have arisen. Although the arbitrator has determined that David Meryl was a proper party to the motion to quash the subpoena, he has expressly declined to find that he has jurisdiction over David Meryl for all purposes. *See* Affidavit of Arthur Lewis, Exhibit D at 4 & n. *. At every appearance before the arbitrators, David Meryl has expressly reserved its objection to the arbitrator's jurisdiction. Moreover, David Meryl continues to maintain that it is not the alter ego or affiliate of Tudor and is, therefore, not subject to the Agreement. David Meryl's position that, for purposes of seeking a *Boys Markets* injunction, it is a signatory that may avail itself of the no-strike provision is self-contradicting and unconvincing.

Although the Union's position is also inconsistent, it is more tenable than David Meryl's. The Union contends that David Meryl, as Tudor's affiliate or alter-ego, is bound by the Agreement. The Union then turns around and maintains that David Meryl cannot avail itself of the Agreement's no-strike clause. The Union's position is that until David Meryl is found to be an affiliate, it cannot avail itself of the benefits of the Agreement or be subject to its obligations. David Meryl, on the other hand, would have us assume the unproven conclusion that it opposes, *i.e.*, that it is the alter ego of Tudor. The Union is correct in assuming David Meryl and Tudor to be unaffiliated until they are proved otherwise.

A recent decision from the Sixth Circuit and the two Supreme Court decisions upon which the Sixth Circuit relied lend additional support to our conclusion that *Boys Markets* and its progeny do not sanction the requested relief. In *Service Hospital, Nursing Home, and Public Employees Union v. Commercial Property Services, Inc.*, 755 F.2d 499 (6th Cir.1985), the plaintiff Union sought to enjoin the defendant, CPS, and its putative alter-ego, CCM, from discharging their union employees allegedly in violation of a collective bargaining agreement. The Court of Appeals reversed the district court's order enjoining CCM, which had no contract with the defendant Union. Although CPS, as a party to the contract, could be enjoined under *Boys Market*, the Court of Appeals held that the district court could not enjoin CCM without first finding that CCM was bound by the arbitration agreement. The Sixth Circuit analogized the case to *Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). In that case, Howard Johnson Co. bought a business whose prior owner had had a collective bargaining agreement with the defendant union. The court held that the prior agreement could

not bind Howard Johnson, absent a judicial determination of substantial continuity or identity of the work force or assumption of the agreement to arbitrate by Howard Johnson. The Court distinguished its previous decision in *John Wiley and Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), in which a successor corporation was ordered to arbitrate pursuant to a collective bargaining agreement signed by its predecessor, with whom it had merged. The Court noted that the successor was properly ordered to arbitrate in *Wiley* where the predecessor employer entity had "completely disappeared" as the result of a merger. Unless the union were afforded some remedy against the successor, it would have no means of enforcing those obligations voluntarily undertaken by the merged corporation which were intended to survive a change in ownership.

■■■ The principle that emerges from these cases is that a court will not enforce an agreement to arbitrate against an alleged alter-ego or affiliate absent a finding that that party is, in fact, an alter-ego or affiliate. Only if the predecessor disappears will the courts order the putative alter-ego to arbitrate without a finding as to its status. It follows that, absent the predecessor's disappearance, a court should not enforce a no-strike clause at the behest of a putative alter-ego or affiliate until the court finds that the alter-ego is in fact

bound by the agreement containing the no-strike provision. In this case, Tudor has not disappeared. Indeed, it is arbitrating its dispute with the Union. Any order enforcing the no-strike clause in David Meryl's favor must await a finding as to David Meryl's status—a finding which can, in this case, be made by the arbitrator.[3]

For all of the foregoing reasons, we decline to issue a *Boys Markets* injunction enjoining the Union from picketing David Meryl and from otherwise interfering with its business.[4]

Beyond deciding whether a *Boys Markets* injunction is available as a matter of law, the district court, prior to issuing such an injunction, must also

> consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

*Boys Markets, supra,* 398 U.S. at 254, 90 S.Ct. at 1594 (quoting *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962) (Brennan, J., dissenting).) So far as they remain consistent with these principles, the require-

---

**3.** The pending arbitration proceeding obviates the need for an evidentiary hearing in the district court to determine David Meryl's status. Moreover, we question the wisdom of ordering the district courts to resolve the identical issue that is before the arbitrator.

> The parties have agreed to submit to grievance procedures and arbitrate, not to litigate. They have not contracted for a judicial preview of the facts and the law. Had they anticipated additional regulation of their relationships pending arbitration, it seems very doubtful thatd they would have resorted to litigation rather than to private arrangements.... [T]he parties' agreement to adjust or to arbitrate their differences themselves would be eviscerated if the courts for all practical purposes were to try and decide contractual disputes at the preliminary injunction stage.

*Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 411–12, 96 S.Ct. 3141, 3149–50, 49

L.Ed.2d 1022 (1976). *But see AT & T Technologies, Inc. v. Communications Workers,* — U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (court asked to order arbitration of a grievance under a collective bargaining agreement must first determine that the parties intended to arbitrate the dispute).

**4.** We do not know whether other avenues of relief are available to David Meryl. At oral argument and in an affidavit submitted immediately prior to oral argument, the Union informed the Court that David Meryl had recently lodged a complaint with the National Labor Relations Board ("NLRB") and that this complaint rests on many of the facts at issue in this case. The Union contended that the NLRB proceeding preempts the current action. The Union did not, however, brief the preemption issue and we decline to consider it at this time.

ments of sections 7–9 of the Norris-La-Guardia Act, 29 U.S.C. §§ 107–09 (1982),[5] also apply. *See United Parcel Service, Inc. v. Local 804, supra,* 698 F.2d 100 (section 8); *Hoh v. Pepsico, Inc.,* 491 F.2d 556, 560–61 (2d Cir.1974) (section 7); *New York Telephone Co. v. Communications Workers, supra,* 445 F.2d at 49–50 (section 9).

The Union contends that David Meryl has failed to establish several of these additional prerequisites to *Boys Markets* injunctive relief. Although we need not reach this issue, we note that plaintiff David Meryl's allegation of irreparable harm remains somewhat suspect without the evidentiary hearing for which David Meryl declined to ask. Material factual disputes remain as to whether violence has taken place on the picket line and who, if anyone, is responsible. The extent to which the picketing is interfering with David Meryl's business is also unclear. On the other hand, the Union's contention that David Meryl has not made every reasonable effort to settle this dispute is baseless. David Meryl has appeared at the arbitration proceeding. No more is required. *See* 29 U.S.C. § 108, *supra,* n. 5.[6]

### 2. Tudor

Although the picketers' signs refer to Tudor, the Union has taken no other action with respect to Tudor. Indeed, it could take no such action since Tudor is not currently in business. We do not perceive how the picket signs alone can irreparably harm a company that is not currently operating.

---

**5.** Section 107 provides in pertinent part,

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction ... shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief then will be inflicted upon defendants by the granting of relief;

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107 (1982). Section 108 states,

No ... injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery or mediation or voluntary arbitration.

29 U.S.C. § 108 (1982). Finally, section 109 provides

No ... temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such ... injunction; and every ... injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specified act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in this chapter.

**6.** In the alternative, the Union contends that even if *Boys Markets* relief were otherwise available, David Meryl, by failing to comply with the arbitrator's interim determination within twenty-four hours of its issuance lost the benefits of the no-strike clause. Article 8 of the Agreement relieves the Union of its no-strike obligation once "a decision of the Impartial Chairman, has not been complied with within twenty-four hours after rendition...." Because questions remain as to whether this provision applies to interim determinations of the arbitrator, and as to whether David Meryl has, in fact, not complied with the interim determination, the Court cannot now decide whether the Union is relieved of its no-strike obligation with respect to David Meryl.

### III. Conclusion

The *Boys Markets* decision was a narrow one, designed to vindicate the arbitration process without otherwise interfering with the anti-injunction bias of the federal labor laws. *See Boys Markets, supra.* We decline today to expand the scope of *Boys Markets* into a new and uncertain area.

The plaintiffs' motions for *Boys Markets* injunctive relief are, therefore, denied.

SO ORDERED.