# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

---

No. 96-3261

---

Kansas City Southern Transport      *
Company, Inc.; Kansas City       *
Southern Railway Company,        *
                                *
            Appellees,      *
                                *   Appeal from the United States
    v.                     *   District Court for the
                                *   Western District of Missouri
Teamsters Local Union #41;       *
Affiliated with the International   *
Brotherhood of Teamsters,        *
                                *
            Appellant.      *

---

Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[*]
     District Judge.

---

Submitted: March 10, 1997

Filed: October 2, 1997

---

McMILLIAN, Circuit Judge.

Teamsters Local No. 41 (the Union) appeals from a preliminary injunction in favor of Kansas City Southern Transport Company, Inc. (Transport), and the Kansas

---

[*]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

City Southern Railway Company (Railway) (together, "the plaintiffs") entered in the United States District Court[1] for the Western District of Missouri enjoining the Union's picketing activity at various Railway facilities. Kansas City S. Transp. Co. v. Teamsters Local No. 41, No. 96-0823-CV-W-2 (W.D. Mo. Aug. 19, 1996) (hereinafter, "modified order") (modifying id. (Aug. 9, 1996) (hereinafter, "order" or "original order")). The district court initially issued a preliminary injunction against the Union and ordered arbitration of the underlying dispute, order at 9-10, but it subsequently modified its order, staying the arbitration provisions of the original order pending an evidentiary hearing on the plaintiffs' request for a permanent injunction. Modified order at 1. For reversal, the Union argues that the district court erred in holding that it had subject matter jurisdiction and, alternatively, that the injunction violates the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115. For the reasons discussed below, we affirm the order of the district court.

Jurisdiction was asserted in the district court based upon 29 U.S.C. § 185(a). Jurisdiction on appeal is proper based upon 28 U.S.C. § 1292(a). The notice of appeal was timely filed under Fed. R. App. P. 4(a).

## I. Background

The relevant facts are not in dispute and are taken in large part from the district court's original order. Order at 1-3. Transport is a Louisiana corporation engaged in the business of transporting freight to and from railroad cars. Railway is a Missouri corporation engaged in the operation of an interstate railroad with operations in eleven states. Transport and Railway were parties to a contract under which Transport operated the intermodal (piggyback) ramp and provided loading and unloading services for Railway at Kansas City, Missouri, and other locations. The Union represented

---

[1] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Transport's hourly paid employees who performed the ramping services at the Kansas City, Missouri, location. Transport and the Union signed a collective bargaining agreement (the CBA) covering Transport's employees from April 1, 1994, through March 31, 1998. Article 40 of the CBA provides that all differences arising between Transport and the Union or any employee are to be settled within the context of a grievance-arbitration process. Railway is not a signatory to the CBA.

In May 1996, Railway notified Transport of its decision to terminate the use of Transport's services at the Kansas City, Missouri, location. Instead, Railway contracted with a non-union entity, In-Terminal Services, Inc., to perform those services. Once Railway terminated its relationship with Transport, Transport did not have any work to perform at the Kansas City, Missouri, location. Accordingly, on May 31, 1996, Transport notified the Union that, due to Railway's decision to terminate Transport's services at the Kansas City, Missouri, location, Transport would discontinue operations in Kansas City. As a result, Transport terminated seventeen employees that were represented by the Union.[2]

The Union subsequently filed an unfair labor practice charge with the National Labor Relations Board, alleging that Transport and Railway are a "single employer"[3] and that

> [s]ince on or about May 14, 1996, and continuing thereafter, the Employer has failed and refused to bargain with Teamsters Local 41, affiliated with International Brotherhood of

---

[2]Consequently, the real dispute is between the Union and Railway.

[3]Under the single employer doctrine, two or more related enterprises are treated "as a single employer for purposes of holding the enterprises jointly to a single bargaining obligation or for the purpose of considering liability for any unfair labor practices." Iowa Express Distrib., Inc. v. N LRB, 739 F.2d 1305, 1310 (8th Cir.), cert. denied, 469 U.S. 1088 (1984).

Teamsters, AFL-CIO, a labor organization, by, _inter alia_, subcontracting all of the bargaining unit work to a non-union firm in order to evade the obligations under its collective bargaining agreement with Teamsters Local 41.

On or about May 29, 1996, the Employer terminated the employment of all 17 of the bargaining unit employees at its piggyback ramp operation in Kansas City, [Missouri,] because of their membership in, or support of, Teamsters Local 41.

On August 2, 1996, as a result of the termination, the Union and the terminated Transport employees began picketing at nine Railway facilities in the Kansas City, Missouri, area to protest what the Union characterized as unfair labor practices.[4] Also on August 2, 1996, the plaintiffs petitioned the district court for injunctive relief against the Union asserting that the Union's picketing violated the no-strike pledge contained in the CBA and seeking declaratory judgment that Railway is not a party to, or bound by, the CBA. Later that day, the district court issued a temporary restraining order against the Union. _See_ order at 2.

On August 9, 1996, the district court granted the plaintiffs' request for a preliminary injunction enjoining the Union and the Transport employees from their picketing activities and ordered that, as a condition of receiving the preliminary injunction, Railway enter into arbitration with the Union regarding the labor dispute. _Id._ at 9-10. The district court held that Railway failed to provide evidence in support of its position that it is not a single employer with Transport and, accordingly, ordered Railway to arbitrate the dispute with the Union pursuant to the CBA. _Id._ at 6, 9-10. However, on August 19, 1996, pursuant to the plaintiffs' motion to modify the order, the district court modified its August 9, 1996, order and stayed the arbitration provisions of the original order pending an evidentiary hearing on the plaintiffs' request

---

[4]The Union contends that the employees were terminated in order to free the plaintiffs of a "no subcontracting" clause contained in the CBA.

for a permanent injunction, including the issue of single employer status. Modified order at 1. Transport offered to arbitrate the dispute, and Railway agrees to arbitrate the dispute if the district court finds that Transport and Railway are a single employer. However, rather than proceeding with the evidentiary hearing and subsequent arbitration with Transport and possibly Railway, the Union appealed the preliminary injunction.

## II. Discussion

It is necessary at the outset to clarify the relationships between the parties and to set forth the Union's seemingly inconsistent position on appeal. As noted earlier, the real dispute in this case is between the Union and Railway. However, the only way that the Union can compel Railway to arbitrate the underlying dispute -- i.e. the termination of Transport's employees -- is through the CBA, to which Transport is the sole signatory employer. Thus, the Union, in order to enforce the CBA's grievance arbitration clause against Railway, argues that Railway and Transport are a single employer and, therefore, both are bound by the CBA. Alternatively, the Union argues that, if Railway is not bound by the CBA's grievance arbitration clause, then the Union is not bound by the CBA's no-strike clause and, therefore, Railway is not entitled to a preliminary injunction.

"We review an order granting a preliminary injunction for an abuse of discretion, clear legal error, and clearly erroneous fact findings." Hill v. Xyquad, Inc. 939 F.2d 627, 630 (8th Cir. 1991); see Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 n.8 (8th Cir. 1981) (en banc) (Dataphase) (noting that the grant of preliminary relief is within the discretion of the district court).

A. Subject Matter Jurisdiction

The Union argues that the district court lacked subject matter jurisdiction in this case because the essential cause of action was brought by an employer (Railway) who has never been a party to the CBA and who cannot thereby claim any of the benefits or promises incorporated therein -- in particular, the mandatory grievance-arbitration procedure and the attendant no-strike pledge. The Union claims that Railway consistently asserted to the district court that it was not bound to arbitrate under the CBA. Therefore, contends the Union, Railway cannot, on the one hand, seek protection from the CBA's no-strike clause and, on the other hand, deny any obligation to arbitrate under the grievance-arbitration provision of the CBA.

The Union argues that, because Transport is the signatory employer to the CBA and has since ceased all of its operations, Transport has no real or substantive interest in the underlying dispute or in the enforcement of the CBA. The Union therefore contends that Railway is the real party in interest because the picketing could not have affected Transport's already defunct business. The Union maintains that, although Railway is the real party in interest, Railway is unable to enforce the no-strike pledge contained in the CBA because it is not a party to the CBA. While the Union admits that a federal court is not necessarily divested of jurisdiction under 29 U.S.C. § 185 based upon the fact that an employer has not signed the labor agreement, it argues that Railway lacks standing to bring its claim because it denies being bound to the CBA, specifically, to the obligation to arbitrate disputes under the CBA.

We disagree and hold that the district court had subject matter jurisdiction over the plaintiffs' petition for injunctive relief against the Union and request for declaratory relief regarding Railway's obligation to arbitrate. The district court's jurisdiction was predicated on § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a):

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to arbitrate the arbitrability issue." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 208 (1991) (citations omitted). The district court's jurisdiction under § 301 is determined by examining whether the major issues to be decided "can be characterized as primarily representational or primarily contractual." Local 204, IBEW v. Iowa Elec. Light & Power Co., 668 F.2d 413, 419 (8th Cir. 1982). The single employer status issue is primarily contractual and subject to the district court's jurisdiction, while the question of whether a non-signatory employer with single employer status is bound by a collective bargaining agreement is primarily representational and thereby outside the district court's jurisdiction. See Brotherhood of Teamsters, Local 70 v. California Consolidators, Inc., 693 F.2d 81, 83-84 n.4 (9th Cir. 1982), cert. denied, 469 U.S. 887 (1984); see also Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co., 672 F.2d 580, 583 (6th Cir. 1982) (district court had jurisdiction under § 301 of LMRA to decide whether party was a "'joint employer' such that it could be bound by the collective bargaining agreement").

In this case, the Union argued to the district court that the plaintiffs were a single employer and that Railway was therefore bound by the grievance-arbitration provision in the CBA. Consequently, the district court ordered an evidentiary hearing on the issue. The district court had subject matter jurisdiction to determine the single employer status issue. See Crest Tankers, Inc. v. National Maritime Union of Am., 605 F. Supp. 1270, 1276 (E.D. Mo. 1985), rev'd on other grounds, 796 F.2d 234 (8th Cir.

1986).  Moreover, the Union is estopped from arguing that Transport has no real interest in the underlying dispute or in the enforcement of the CBA because of its own assertion that the CBA is in effect and that the alleged contractual responsibilities under the CBA -- specifically, the arbitration provisions -- should be enforced.  Accordingly, we hold that the district court properly exercised subject matter jurisdiction.

B. The Norris-LaGuardia Act

The Union alternatively argues that, even if the district court's jurisdiction was proper, the preliminary injunction violated the Norris-LaGuardia Act.

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of employment;
>
> . . . .
>
> (e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
>
> (f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;
> . . . .
>
> (i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified.

29 U.S.C. § 104.  However, in <u>Boys Markets, Inc. v. Retail Clerks Union, Local 770</u>, 398 U.S. 235 (1970) (<u>Boys Markets</u>), the Supreme Court recognized the following narrow exception to the anti-injunction provisions of the Norris-LaGuardia Act:

> in order to accommodate the anti-injunction provisions of Norris-LaGuardia to the subsequently enacted provisions of § 301(a) [of the Labor Management Relations Act] and the strong federal policy favoring arbitration, it was essential to recognize an exception to the anti-injunction provisions for cases in which the employer sought to enforce the union's contractual obligation to arbitrate grievances rather than to strike over them.

<u>Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n</u>, 457 U.S. 702, 708 (1982), <u>citing</u> <u>Boys Markets</u>, 398 U.S. at 249-53.  Under the <u>Boys Markets</u> exception,

> [a] District Court entertaining an action under § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185,] may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act.  When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike.  Beyond this, the District Court must, of course, consider whether the issuance of an injunction would be warranted under the ordinary principles of equity -- whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than

> will the union from its issuance.

<u>Boys Markets</u>, 398 U.S. at 254 (citation omitted).  The Supreme Court further refined the <u>Boys Markets</u> exception in <u>Buffalo Forge Co. v. United Steelworkers of Am., AFL-CIO</u>, 428 U.S. 397, 406 (1976), and held that it applies only where the underlying dispute, that which precipitated the strike, is subject to binding arbitration under the parties' collective bargaining agreement.

The Union argues that neither Railway nor Transport satisfied the strict limitations placed on injunctions issued pursuant to the <u>Boys Markets</u> exception to the Norris-LaGuardia Act.  The Union contends that "[a] court should not enforce a no-strike clause at the behest of a putative alter-ego or affiliate until the court finds that the alter-ego is in fact bound by the agreement containing the no-strike provision." <u>Tudor Fashions Ltd. v. Romney</u>, 634 F. Supp. 297, 302 (S.D.N.Y. 1986) (<u>Tudor</u>) (holding that employer was not entitled to a <u>Boys Market</u> injunction because it was not a party to the collective bargaining agreement).  The Union maintains that the district court erred in modifying its initial order, which expressly conditioned the preliminary injunction upon Railway's agreement to arbitrate the dispute.  The Union also claims that the injunction violated the <u>Boys Markets</u> requirement that the plaintiffs show irreparable harm caused by the picketing because Transport was no longer doing business.  See <u>Tudor</u>, 634 F. Supp. at 303 (holding that, because plaintiff was not doing business, it could not suffer harm from the union's conduct).  The Union further contends that the plaintiffs were not entitled to injunctive relief because of their unclean hands, as a single employer, in transferring the work to In-Terminal Services, Inc., in order to avoid their collective bargaining obligations with the Transport employees.

The Union also argues that the injunction was improper because it was issued without strict conformity to the procedural requirements of the Norris-LaGuardia Act, 29 U.S.C. § 101.  The Union claims that the district court lacked the authority to issue the preliminary injunction because it failed to conduct an evidentiary hearing.  See <u>id.</u>

§ 107. Further, the Union maintains that the issuance of the injunction violated 29 U.S.C. § 108 because the plaintiffs failed to exhaust all alternative dispute resolution mechanisms when Railway refused to submit to immediate arbitration. Finally, the Union claims that the injunction was improper for failing to satisfy the requirement of 29 U.S.C. § 109 that findings of fact be made and filed by the district court prior to the issuance of the injunction. The Union maintains that, because these procedures were not followed, not only did the preliminary injunction violate the provisions of the Norris-LaGuardia Act, but also the district court lacked jurisdiction to enter the preliminary injunction.

We hold that the district court properly issued the injunction under the rationale of <u>Boys Markets</u> and <u>Buffalo Forge</u> because the dispute underlying the strike, Transport's termination of its employees, is arbitrable under the collective bargaining agreement. The prerequisites for a <u>Boys Markets</u> injunction are present in this case: (1) Transport and the Union are signatories to the CBA, which expires March 31, 1998, and are bound by the grievance arbitration clause contained therein[5]; (2) the issuance of the injunction was properly conditioned on the district court's order for the parties to the CBA to arbitrate, an order governing the Union and Transport, as well as Railway if it is found to be a party to the CBA; and (3) injunctive relief is warranted under ordinary principles of equity. <u>See Boys Markets</u>, 398 U.S. at 254. Under ordinary principles of equity, this court considers: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." <u>Dataphase</u>, 640 F.2d at 114. "In balancing the equities, no single factor is determinative." <u>Id.</u> at 113. The district court did not abuse its discretion in concluding, based upon the following reasoning, that

---

[5]The labor contract is in effect between Transport and the Union because, if Transport resumed operations, the CBA would govern the collective bargaining relationship until it expires on March 31, 1998.

"these factors weigh heavily in favor of Railway."  Order at 8.

> If the Union resumes its picketing activity, Railway employees that are members of the same union may indeed refuse to work[,] thereby severely restricting Railway's ability to carry out a modicum of business activities.  Further, members of the public that depend on Railway's services may be inconvenienced by the Union's activities.  As such, [the] [c]ourt is persuaded that Railway is faced with the possibility of irreparable harm if injunctive relief is not granted.
>
> Similarly, the balance of the harm weighs heavily in favor of Railway. . . .  The Union has filed at least two charges with the [National Labor Relations] Board on behalf of these [seventeen terminated] employees.  By filing these charges with the Board, the Union is assured its constituents' grievances will be addressed.  In contrast, Railway runs the risk of irreparable harm if the preliminary injunction is not granted. . . .  While there is no way of predicting how, or to what extent, a continuation of the Union's picket[ing] activity would affect Railway, it is almost certain to have detrimental financial ramifications.
>
> Moreover, given the fact that the [CBA] specifically prohibits the very activity the Union is engaged in, and in light of the United States Supreme Court's stated preference for the resolution of labor disputes by arbitration, . . . the [c]ourt finds that it is likely that plaintiffs would succeed on the merits.
>
> Finally, the [c]ourt is persuaded that it is in the best interest of the public to issue the preliminary injunction.  Railway is part of an industry that is paramount to the success of this country's interstate commerce.  If, as here, the facts do not warrant it, disruption of such a vital industry should be avoided.

Id. at 8-9 (citation omitted).  Contrary to the Union's argument, Transport could be

irreparably harmed if, in the future, it resumes its business operations in Kansas City, Missouri, because the Union's picket signs alleged unfair labor practices by Transport and Railway.  Moreover, under the Union's view that Railway and Transport are a single employer, Railway would likely be irreparably harmed because of the disruption to its interstate rail service caused by its own uninvolved employees' refusal to cross the Union's picket line.  This likelihood, together with the existence of the other three <u>Dataphase</u> factors, is sufficient, without further proof of irreparable harm to Transport, to support the relief granted.

Furthermore, we disagree with the holding in <u>Tudor</u> because it is contrary to federal labor policy favoring arbitration as "a mechanism for the expeditious settlement of industrial disputes without resort to strikes, lockouts, or other self-help measures."  <u>Boys Markets</u>, 398 U.S. at 249.  "The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief."  <u>Ferry-Morse Seed Co. v. Food Corn, Inc.</u>, 729 F.2d 589, 593 (8th Cir. 1984) (issuing injunction to restore business activity).  It is therefore consistent with federal labor policy to preserve the status quo by enjoining the Union's picketing over the termination of the Transport employees, which may be an arbitrable issue, pending a final determination of whether the Union is bound to resolve the dispute by arbitration.

We hold that the district court's order complies with <u>Boys Markets</u>.  The district court properly modified its original order issuing the preliminary injunction and stayed the arbitration provisions "pending an evidentiary hearing on the permanent injunction (including the issue of single employer status)."  Modified order at 1.  In <u>AT&T Technologies, Inc. v. Communications Workers of Am.</u>, 475 U.S. 643 (1986) (<u>AT&T Technologies</u>), the Supreme Court set forth three rules governing a party's duty to arbitrate.  First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>Id.</u> at 648 (citation omitted).  Second, "the question of arbitrability -- whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance

-- is undeniably an issue for judicial determination." Id. at 649. Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." Id. In the present case, the modified order fully complies with the national labor policy underlying Boys Markets. See 398 U.S. at 249. The district court stayed, rather than deleted, the original order's arbitration provisions, and, thus, those provisions are merely held in abeyance. "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." AT&T Technologies, 475 U.S. at 649 (citation omitted). Therefore, the district court appropriately held the order to arbitrate in abeyance pending an evidentiary hearing to determine the single employer status issue and, consequently, whether Railway is obligated to arbitrate under the CBA. See id.[6]

We decline to decide whether the procedural provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 107-109, apply to Boys Markets injunctions.[7]

---

[6]If the district court should conclude that Railway does not share single employer status with Transport and therefore is not a party to the CBA, Railway will not obligated to arbitrate the underlying dispute. We leave to the district court the question of whether, in that case, Transport alone is entitled to a Boys Market injunction. However, we note that, in such a case, Railway would likely have a damages cause of action against the Union alleging that the Union's activities constituted "secondary" picketing in violation of 29 U.S.C. § 158(b)(4). See 29 U.S.C. § 187(b); see also Beelman Truck Co. v. Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 525, 33 F.3d 886, 890 (7th Cir. 1994).

[7]See Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70, 415 U.S. 423, 445 n.19 (1974) (declining to reach the question of whether a Boys Markets injunction must comply with § 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107). But compare, e.g., Tejidos De Coamo, Inc. v. ILGWU, 22 F.3d 8, 12-13 (1st Cir. 1994) (relying upon Textile Workers Union of Am. v. Lincoln Mills of Alabama, 353 U.S. 448 (1957), and Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235 (1970), for the proposition that § 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, does not govern a case involving affirmative enforcement of collective bargaining contracts in support of arbitration), with Westmoreland Coal Co. v. International Union, United Mine Workers of Am., 910 F.2d 130, 138 (4th Cir. 1990) (holding that "[s]ection 9 of the Norris-LaGuardia Act, [29 U.S.C. § 109,] which must be accommodated with section

-14-

In any event, the

---

301 of the National Labor Relations Act, applies to <u>Boys Markets</u> actions").

-15-

procedural requirements were satisfied in this case. The district court satisfied the requirements of 29 U.S.C. § 107, which prevents the district court's issuance of a preliminary injunction "except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court." In this case, the district court found, and the Union does not contest on appeal, that the relevant facts in this case are undisputed. See order at 1. Thus, we hold that an evidentiary hearing on the undisputed facts was unnecessary. The requirements of 29 U.S.C. § 108, which precludes the issuance of an injunction in favor of a party who has not exhausted the available alternative dispute resolution mechanisms to avoid litigation, was satisfied because Transport offered to arbitrate the dispute and Railway agrees to submit to arbitration if the district court finds that it is obligated to do so. With regard to the factual findings required under 29 U.S.C. § 109, the material facts were undisputed, negating the necessity for any further findings.

### III. Conclusion

The district court did not abuse its discretion in enjoining the picketing while staying the order to arbitrate because Railway agrees to arbitrate the dispute, as required by Boys Markets, if the district court finds such an obligation to exist based on Railway and Transport sharing single employer status. Because of the threat of irreparable harm to Railway if the Union is allowed to picket Railway's facilities and Railway is ultimately found not to share single employer status with Transport, it is appropriate to preserve the status quo pending final determination of the single

employer status issue.  Accordingly, we affirm the order of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.