The **WOODLAWN CEMETERY**,
Plaintiff–Appellee,

v.

**LOCAL 365, CEMETERY WORKERS AND GREENS ATTENDANTS UNION**, Defendant–Appellant.

No. 1149, Docket 90–7987.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1991.

Decided April 4, 1991.

Christopher Harold, White Plains, N.Y. (Harold, Salant, Strassfield & Spielberg, of counsel), for defendant-appellant.

John W. Dean, New York City (Milbank, Tweed, Hadley & McCloy, of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, LUMBARD and CARDAMONE, Circuit Judges.

OAKES, Chief Judge:

Appellant Local 365, Cemetery Workers and Greens Attendants Union (the "Union") represents a bargaining unit consisting of certain employees of the appellee, Woodlawn Cemetery ("Woodlawn"), which owns and operates a cemetery in the Bronx, New York. John Grosso was an employee of Woodlawn and shop steward of the Union until his discharge by Woodlawn on May 24, 1990, for allegedly fighting with another Woodlawn employee. Prior to that time, on May 16, 1989, Woodlawn suspended Grosso for thirty days for allegedly writing a letter to Woodlawn's president that maliciously and falsely attacked the personal characters of certain Woodlawn supervisors.

Both the May 1989 suspension and the May 1990 discharge were promptly contested by the Union, which filed demands for arbitration on June 3, 1989 and May 30, 1990, pursuant to the parties' collective bargaining agreement (the "Agreement"). The Union asserted that the suspension and discharge violated the Agreement because they were not done for "just and sufficient cause" within the meaning of Article VII, section A, of the Agreement.

Even as the Union championed Grosso's contractual rights under the Agreement, Grosso sought to vindicate his statutory rights under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* Immediately after his suspension, and then again after his discharge, Grosso filed an unfair labor practice charge with the National Labor Relations Board ("NLRB" or the "Board"), alleging that Woodlawn had suspended him because he had engaged in protected concerted activities under section 7 of the NLRA. These charges caused the NLRB to issue complaints against Woodlawn, which were consolidated for hearing. The hearing commenced on July 9, 1990, before Administrative Law Judge James F. Morton (the "ALJ").

On September 24, 1990, Woodlawn moved to stay the two arbitration proceedings pending a final determination in the consolidated NLRB case. At that time, after seven days before the ALJ, a total of

22 witnesses had testified, in excess of 75 exhibits had been received into evidence, and only one more day was needed to complete the hearing.[1]

The district court granted Woodlawn's motion on October 2, 1990, staying the arbitration proceedings until a final decision had been rendered, including any appeals, in the NLRB proceeding. The Union now appeals the district court order.

## DISCUSSION

■ The decision whether to grant or deny interim injunctive relief such as a stay of arbitration proceedings rests in the sound discretion of the district court, and will not be disturbed on appeal absent a showing of abuse of discretion. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975); *Nelson v. IBEW, Local Union No. 46*, 899 F.2d 1557, 1563–64 (9th Cir.1990); *see also Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 285 (2d Cir.1986) (Oakes, J., concurring) (discussing abuse of discretion standard).

Here, the district carefully weighed the competing interests before concluding that the balance of equities tipped in favor of the issuance of a stay. On the one hand, the court reasoned, issuance of the stay would cause only minimal harm to Grosso, who could be made whole by an NLRB decision in his favor, and would not be prevented by an adverse Board decision from pursuing his contractual claim in arbi-

tration.[2] On the other hand, the court found, Woodlawn would suffer significant harm were it forced to relitigate in arbitration the very issues it had already litigated extensively before the ALJ.[3] Recognizing the burden and wastefulness of duplicative proceedings, the court concluded that a stay was justified. This was not an unreasonable conclusion. At the time the district court issued its order, the parties had nearly completed an extensive trial of the facts before the ALJ. Presently, the hearings have been concluded, post-hearing briefs have been filed, and the matter is *sub judice* with the NLRB. Given that many of the issues to be resolved by the arbitrators have been fully and fairly litigated before the ALJ, it would be repetitious and wasteful to compel arbitration at this time. *Accord Allied Maintenance Corp. v. Local No. 32B–32J, Serv. Employees Int'l Union*, 88 Lab. Cas. (CCH) ¶ 11,859, 1980 WL 2056 (S.D.N.Y.1980); *Colonie Hill, Ltd. v. Local 164, Bartenders, Hotel & Restaurant Employees Union*, 343 F.Supp. 986, 988 (E.D.N.Y.1972); *Kentile, Inc. v. Local 457, United Rubber, Cork, Linoleum & Plastic Workers*, 228 F.Supp. 541, 544–45 (E.D.N.Y.1964).

*Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93 (2d Cir.1986), on which the Union places principal reliance, is not to the contrary. In *Emery*, in which we reversed an order enjoining arbitration, we rejected the employer's claim that it would

---

1. The hearing resumed and was completed on October 11, 1990, at which time the ALJ heard the testimony of a witness who had initially failed to respond to the NLRB subpoena. Woodlawn and the NLRB filed post-hearing briefs in early December 1990. At present, then, there has been a full trial of the facts, and the matter is fully submitted to the NLRB.

2. Of course, Grosso would be bound in any subsequent arbitration by the Board's findings of fact and law. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 26 (2d Cir.1983). However, Grosso could not be precluded from arguing that Woodlawn's behavior violated the collective bargaining agreement. The question of Woodlawn's contractual liability is not at issue in, and will not be resolved by,

the NLRB proceeding, which concerns only the legality of Woodlawn's conduct under the NLRA. *See Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir.1986); *International Union of Elec., Radio & Machine Workers v. General Elec. Co.*, 407 F.2d 253, 264 (2d Cir.1968), *cert. denied*, 395 U.S. 904, 89 S.Ct. 1742, 1746, 23 L.Ed.2d 217 (1969).

3. The equities might be different, the court suggested, had Woodlawn (rather than Grosso) initiated the unfair labor practice charges with the NLRB as a dilatory tactic to stay proceedings in the more expeditious arbitral forum. Here, however, Grosso initiated both the NLRB and the arbitration proceedings. There is therefore no reason to infer that Woodlawn has acted in bad faith in attempting to stay one set of proceedings.

suffer irreparable injury if compelled to arbitrate, reasoning as follows:

> [A]s the preferred method for resolving labor disputes, arbitration by itself imposes no [irreparable] injury to the resisting party, except perhaps in "extraordinarily rare" circumstances, which we need not try here to imagine. The monetary cost of arbitration certainly does not impose ... legally recognized irreparable harm. Nor is the pendency of the same issues before the NLRB a basis for staying arbitration. The NLRB and arbitrators have concurrent, overlapping jurisdiction over many labor disputes and the NLRB may either defer to the arbitrator's award or, if the latter is inconsistent with established law, disregard it.

786 F.2d at 100 (citations omitted). We believe that this case presents one of the "extraordinarily rare" circumstances alluded to in *Emery*. Here, the employer is threatened with more than simply the spectre and cost of arbitration and the pendency of identical issues before the NLRB. Here, Woodlawn faces the cost of relitigating in a second adversarial hearing issues already fully tried before the NLRB. By contrast, in *Emery*, there had been no formal adversarial hearing by the NLRB prior to the employer's motion to enjoin the arbitration proceeding. Indeed, the NLRB in *Emery* had deferred deciding one issue until its arbitrability had been determined, and had declined to issue a complaint on charges regarding another issue. *See id.* As a consequence, the factors that Judge Cannella considered dispositive in concluding that the equities were balanced in Woodlawn's favor were not present before the *Emery* court.

Based on the foregoing analysis, we hold that the district court's order granting a stay of the arbitrations was an appropriate exercise of its discretionary authority. However, while we affirm the district court's order staying the two arbitration proceedings pending a final determination in the consolidated NLRB case, we are wary of the possibility that this case, like countless others presented to the Board, will "enter a new dimension—one where time has little meaning." House Committee on Government Operations, *Delay, Slowness in Decisionmaking, and the Case Backlog at the National Labor Relations Board,* H.R.Rep. No. 1141, 98th Cong., 2d Sess. 16 (1984); *see also Olivetti Office U.S.A., Inc. v. NLRB,* 926 F.2d 181, 189–90 (2d Cir.1991) (refusing to enforce Board-ordered remedy because of the Board's protracted delay in issuing its decision); *Emhart Indus. v. NLRB,* 907 F.2d 372, 379 (2d Cir.1990) (same). We have no intention of allowing the Board's "snail-like pace" [4] to delay unduly the Union's ability to seek arbitral relief. Therefore, in the interest of justice, we retain jurisdiction of this case. If the NLRB has not reached a final determination by December 31, 1991, we will upon application reconsider whether the district court's injunction should be lifted.

Affirmed.

---

**4.** *NLRB v. Staub Cleaners, Inc.,* 418 F.2d 1086, 1091 (2d Cir.1969) (Lumbard, C.J., dissenting), *cert. denied,* 397 U.S. 1038, 90 S.Ct. 1357, 25 L.Ed.2d 649 (1970).