**In the Matter of the Petition to Stay the Arbitration Demanded of VITTORIA CORPORATION, Petitioner,**

**v.**

**NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL—CIO and Peter Ward, individually and as President of the New York Hotel and Motel Trades Council, Respondents.**

No. 98 Civ. 8139(WHP).

United States District Court,
S.D. New York.

Dec. 23, 1998.

Michael R. Cooper, Richard Greenberg, Jackson, Lewis, Schnitzler & Krupman, New York City, for the petitioner.

Vincent F. Pitta, Barry N. Saltzman, Stephen F. O'Beirne, Herrick, Feinstein LLP, New York City, for the respondents.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

On November 4, 1998, Petitioner Vittoria Corporation ("Vittoria") filed a verified petition in New York State Supreme Court seeking to stay an arbitration demanded by Respondents New York Hotel and Motel Trades Council and its president, Peter Ward (collectively, the "Council") pursuant to a collective bargaining agreement. On November 5, 1998, the Supreme Court granted Vittoria's application for a stay and scheduled a hearing for November 18, 1998. On November 16, 1998, the Council removed the proceeding to this Court pursuant to 28 U.S.C. § 1441(a) and (b).

Under Fed.R.Civ.P. 65(b), the temporary restraining order issued by the Supreme Court continued in effect for ten business days. This Court, on the consent of the parties, extended the temporary restraining order until such time as it ruled on the parties' respective motions. Vittoria moves to permanently stay the arbitration, while the Council cross-moves to dissolve the temporary restraining order and compel arbitration. For the reasons set forth below, Vittoria's motion is denied and the Council's cross-motion is granted.

## FACTUAL BACKGROUND

Vittoria owns and operates the Harry Cipriani Restaurant located at the Sherry Netherland Hotel. The Council is the exclusive collective bargaining representative of New York City hotel and restaurant industry employees. The Council and the Hotel Association of New York City are signatories to an Industry–Wide Collective Bargaining Agreement ("IWA"). The Council and Vittoria were signatories to a "Me–Too" agreement, dated August 2, 1995, under which Vittoria agreed to be "bound by all of the terms of any renewal Industry–Wide Agreement between the Hotel Association and the Hotel Trades Council, as the same applies to restaurant concessionaires and subject to the modifications set forth in the letter agree-

ment dated May 3, 1991." The parties agree that Vittoria is a restaurant concessionaire as defined in the IWA. The May 3, 1991 letter agreement reiterates that Vittoria "adopts and assumes the collective bargaining agreement between the Hotel Association of New York City, Inc. and the New York Hotel and Motel Trades Counsel, AFL—CIO ... as amended by the [1990] Memorandum of Understanding between the same parties .. subject to ... [five] terms and conditions." The modifications pertain to participation in insurance and pension funds, reimbursement for cleaning uniforms, provision of room service to regular restaurant staff, and job classifications.

Article 26 of the IWA provides for arbitration of "[a]ll complaints, disputes, or grievances arising between the parties ... involving questions or interpretation or application of any clause of this Agreement, or any act, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved ..." Any such arbitration is to be presided over by the Office of the Impartial Chairman, whose decision shall be final and binding upon the parties.

Article 5 of the 1990 Memorandum of Understanding, also referred to by the parties as the "neutrality provision," provides that "in the event a signatory to the Agreement assumes control and operation of a hotel not signatory thereto, the [Council] shall have a period of nine months from the time the Employer has employed not less than 30% of its work force, to be designated as the bargaining representative of said employee work force."

In a September 23, 1998 letter, the Council informed the Office of the Impartial Chairman that they were filing a complaint against Harry Cipriani, the owner of the Harry Cipriani Restaurant in the Sherry Netherland Hotel, for refusing to meet with the union to discuss the implementation of a collective bargaining agreement. The dispute concerns the application of the neutrality provision to a hotel that is being constructed at 55 Wall Street ("55 Wall").

## DISCUSSION

■ Jurisdiction in this action is conferred by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Section 301 provides a procedural mechanism allowing an employer to commence an action in state or federal court to enforce a collective bargaining agreement in an industry affecting interstate commerce. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). This Circuit has consistently held that the jurisdictional grant embodied in Section 301(a) permits an employer to commence a federal action for a stay of a union-demanded arbitration on the theory that the particular controversy sought to be arbitrated is not, as a matter of federal labor law, covered by the collective bargaining agreement relied upon by the union. *See Black–Clawson Co. v. International Ass'n of Machinists Lodge 355*, 313 F.2d 179, 182 (2d Cir.1962). An action is deemed to "arise under" Section 301 if resolution of the claim requires the court to construe a provision of the collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In this action, the Court is called upon to construe Article 26 of the IWA to determine if it encompasses disputes concerning the neutrality provision in the 1990 Memorandum of Understanding. Because this action is one that "arises under" Section 301, it was properly removed to federal court.

■ Under federal labor policy, arbitration is the preferred method of resolving disputes arising during the term of a collective bargaining agreement. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *C.B.S. Inc. v. International Photographers of the Motion Picture Indus., Local 644*, 603 F.2d 1061, 1062 (2d Cir.1979). District Judge Weinfeld has observed that the role of a district court in such matters is:

restricted to whether the parties did agree to arbitrate the grievance. The issue is to

be decided within the framework of the collective bargaining agreement. And when the parties have entered into a comprehensive arbitration provision, any challenge that a grievance is not intended to be covered thereunder must find support in unmistakably clear language of exclusion; arbitration of a particular dispute is to be ordered unless it may be said with positive assurance that it is excluded by the contract. Whatever doubts exist as to whether the grievance is within the ambit of the arbitral process are to be resolved in favor of coverage.

*International Union of Electrical, Radio, and Machine Workers v. Westinghouse Elec. Corp.*, 218 F.Supp. 82, 84 (S.D.N.Y.1963), *aff'd*, 326 F.2d 758 (2d Cir.1964).

Vittoria makes essentially three arguments in support of its petition for a stay of arbitration. First, it asserts that because it is not a direct signatory to the IWA, but rather a signatory to only the "Me–Too" Agreement, it agreed to be bound by only the terms of the IWA that apply to restaurant concessionaires. It argues that the neutrality provision contained in the 1990 Memorandum of Understanding applies to hotels and not their restaurant concessionaires, and thus, it is not legally obligated to comply with that provision. Second, Vittoria alleges that it does not own, control, or operate 55 Wall. Vittoria states that an entity called Cipriani 55 Wall, L.L.C. is the managing agent of 55 Wall, and that entity has no involvement with Vittoria's operations. Furthermore, Vittoria claims that neither itself nor Cipriani 55 Wall, L.L.C. or any of their stockholders, officers, or directors, is a participant in the group which owns 55 Wall. Because no functional integration exists between Vittoria and Cipriani 55 Wall, L.L.C., Vittoria argues that it is not an alter ego of Cipriani 55 Wall, L.L.C. or the owners of 55 Wall, and thus, should not be compelled to arbitrate. Third, Vittoria argues that the stay of arbitration should be granted because the express terms of the neutrality provision are not satisfied. For example, no entity has "assumed control and operation" of 55 Wall because it is newly constructed, and 55 Wall has not yet hired 30% of its workforce.

The Court must first determine whether the party being compelled to arbitrate is in fact a signatory to the collective bargaining agreement or an alter ego of a signatory to the agreement. Next, the scope of the arbitration clause must be examined to determine if it is a broad one governing "all disputes" as to the meaning, application or compliance with the collective bargaining agreement, or if it is a narrower version which may exclude particular subjects from arbitration. Only then can the Court determine whether the union has made a claim that "on its face is governed by the contract." *Broadcast Arts Prod., Inc. v. Screen Actors Guild, Inc.*, 673 F.Supp. 701, 706 (S.D.N.Y. 1987).

### A. Are the parties required to arbitrate?

■ The first issue is whether Vittoria is a signatory to the IWA. A party cannot be held to a contract to which it is not a party. *See Certified Coatings of Cal. v. International Bhd. of Painters and Allied Trades*, 1998 WL 214424, at *2 (N.D.N.Y.1998). The duty to arbitrate arises from contract in that arbitrators derive their authority to resolve disputes from the express agreements of the parties to submit such grievances to arbitration. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 647, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*quoting Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. 1347)); *AMS Technologies, Inc. v. Metal Polisher Prod. and Novelty Workers Union*, 1997 WL 45347, at *2 (S.D.N.Y.1997).

Vittoria has expressly agreed to be bound by the IWA by signing the "Me–Too" Agreement. Because the arbitration provision is not excluded or listed among the modifications to the IWA set forth in the May 3, 1991 letter, Vittoria has in effect "adopt[ed] and assume[d]" Article 26 of the IWA. Thus, Vittoria has expressly agreed to submit such grievances that fall within the scope of Article 26 to arbitration.

■ Vittoria urges the Court to consider the alter ego doctrine. Under the alter ego

doctrine, "[i]f two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other." *Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743, 748 (2d Cir.1996) (per curiam); *see also Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co., Inc.*, 944 F.2d 1037, 1045 (2d Cir. 1991). The alter ego doctrine focuses on sham transactions or technical changes in operations intended to avoid collective bargaining agreements or disguise their continued identities.

It is the role of the court to decide if the company being compelled to arbitrate is an alter ego or joint employer of a signatory to the collective bargaining agreement. *See Bloomingdale's, Inc., v. Service Employees Int'l Union, Local 32E*, 1998 WL 229441, at *1, 1998 U.S.Dist. LEXIS 6413, at *3 (S.D.N.Y.1998) (finding that arbitrator exceeded his powers by finding that nonsignatory to collective bargaining agreement was obligated to arbitrate on grounds that it was a joint employer); *Tudor Fashions Ltd. v. Romney*, 634 F.Supp. 297, 302 (S.D.N.Y. 1986). The alter ego doctrine is inapplicable here because the Council is seeking to compel arbitration from Vittoria Corporation, not Cipriani 55 Wall, L.L.P. Vittoria is a signatory to the "Me–Too Agreement", and thus should be compelled to comply with Article 26.

■ The second issue is whether the parties have agreed to submit a particular grievance to arbitration. In doing so, a court is not to rule on the potential merits of the underlying claims. *See Broadcast Arts Productions, Inc. v. Screen Actors Guild, Inc.*, 673 F.Supp. 701, 706; *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 96 (2d Cir.1986). Even if a claim appears to be frivolous on the merits, a court should nonetheless require arbitration. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.")

■ Vittoria's arguments that 1) the neutrality provision does not apply to restaurant concessionaires; 2) the neutrality provision does not apply because no entity has assumed control of 55 Wall; and 3) the neutrality provision does not apply because 55 Wall has not yet hired 30% of its workforce; are all arguments that go to the merits. It is the role of the arbitrator, not this Court, to decide the substantive validity of these arguments.

■ The next issue to be decided by this Court is whether the arbitration clause of Article 26 is sufficiently broad to include the dispute in this action. In determining whether a dispute is arbitrable, a court must attempt to implement the intent of the parties by looking first to the terms of the arbitration clause in the contract. *See Cleveland Wrecking Co. v. Iron Workers Local Union 40*, 947 F.Supp. 745, 747 (S.D.N.Y. 1996), *aff'd* 136 F.3d 884 (2d Cir.1997). The question of what grievances a company must arbitrate is a matter to be determined by the court on the basis of the contract entered into by the parties. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 647, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

The clause in Article 26 mandates arbitration of two classes of disputes: 1) those "involving questions of interpretation or application of any clause of the collective bargaining agreement"; and 2) those involving "any acts, conduct, or relations between the parties, directly or indirectly," that the parties fail to resolve. The dispute in this action may fairly be categorized under either class of arbitrable disputes. It involves a question of interpretation of a clause in the agreement because the neutrality provision was incorporated into the collective bargaining agreement through a Memorandum of Understanding. The dispute also involves the acts, conduct, or relations between the parties because the dispute concerns a signatory's assumption of control and operation of a hotel.

■ Moreover, where agreements without arbitration clauses supplement an earlier

"umbrella" agreement containing such a clause, that clause applies to disputes arising under the later agreements. *S.A. Mineracao Da Trindade–Samitri v. Utah International, Inc.,* 745 F.2d 190, 195–96 (2d Cir.1984). Here, although the 1990 Memorandum of Understanding did not contain an arbitration clause, it supplemented an earlier agreement which did, and thus, the arbitration clause in the IWA also applies to disputes over clauses in the Memorandum of Understanding.

 "[T]here is a presumption in favor of arbitration in that an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("Doubts should be resolved in favor of coverage.") This presumption in favor of arbitration is greater when the arbitration clause in the contract is broad. *CPR, CPR (USA) Inc. v. Spray,* 1998 WL 283285, at *1 (S.D.N.Y.1998). In *Rochdale Village, Inc. v. Public Serv. Employees Union,* 605 F.2d 1290 (2d Cir.1979), the court held that when parties have agreed to a broad arbitration clause in which "any and all disputes" will be properly consigned to the arbitrator, there is a strong presumption in favor of arbitration. 605 F.2d at 1295. Article 26 is equally as broad as the arbitration clause in *Rochdale.* Moreover, the Second Circuit has found an arbitration clause identical to Article 26 to be sufficiently broad to warrant the strong presumption in favor of arbitration. *See Pitta v. Hotel Ass'n of New York City,* 806 F.2d 419, 422 (2d Cir.1986). Because Article 26 is susceptible of an interpretation that includes the dispute over the neutrality provision, the dispute is arbitrable.

 Furthermore, in cases where the arbitration clause is broad, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Technologies* at 650, 106 S.Ct. 1415; *Emery Air Freight Corp. v. Local Union 295,* 786 F.2d 93, 97 (2d Cir.1986) ("[E]xclusion of a grievance from a broad [arbitration] clause ... requires compelling proof of the parties'

intent to do so, in language that is unmistakably clear.") In this action, no grievance, either specific or general, is excluded from the broad coverage of Article 26, and Vittoria fails to present any evidence of an intent to exclude disputes over the neutrality provision from the arbitration clause. The dispute regarding the neutrality provision is on its face governed by the contract.

## B. Irreparable Harm

 "Normally a preliminary injunction is preliminary to further proceedings in a district court; if the plaintiff prevails, he is entitled to a final injunction. However, in some circumstances, a plaintiff seeks injunctive relief that is preliminary not to further district court proceedings but proceedings in some other forum." *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1101 (2d Cir.1987). In these types of cases, the relief requested, though labeled a "preliminary injunction," is for all practical purposes a "final injunction" of limited duration. *Id.* The general standard for issuing a preliminary injunction requires that the movant show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *See Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997).

 To establish irreparable harm, a party must demonstrate an injury that is neither remote nor speculative, but actual and imminent. *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989). Vittoria relies on *Maryland Casualty Co.* for the proposition that the time and resources spent arbitrating constitute irreparable harm. 107 F.3d at 985. In that case, the court held that the time and resources spent arbitrating an issue *that was not arbitrable* constituted irreparable harm. *Id.* In that case, the issue was clearly not arbitrable because the arbitration clause expressly excluded the parties being compelled to arbitrate. *See id.* at 983. There is no

**438**

such exclusion in Article 26, and thus *Maryland* is not controlling.

Furthermore, this Circuit has consistently held that "arbitration by itself imposes no such injury to the resisting party, except perhaps in 'extraordinarily rare' circumstances." *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir.1986); *see International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir.1996) (holding that monetary costs of arbitration do not constitute irreparable harm.) This Circuit recognized a narrow exception in *Woodlawn Cemetery v. Local 365, Cemetery Workers and Greens Attendants Union*, 930 F.2d 154 (2d Cir.1991). In that case, the employer faced not only the spectre and cost of arbitration but also the cost of relitigating issues already fully tried before the National Labor Relations Board. *Id.* at 157. The present case is more analogous to *Emery* than to *Woodlawn* because there was no formal adversarial hearing by the NLRB prior to Vittoria's motion to stay the arbitration. Thus, Vittoria has not demonstrated the existence of irreparable harm.

CONCLUSION

Vittoria's motion for a final injunction and for an order staying arbitration is denied. The temporary restraining order issued by the New York State Supreme Court is lifted. The Council's cross-motion for an order denying Vittoria's motion for a final injunction and dismissing the complaint is granted. The Council's cross-motion for an order compelling Vittoria to raise its defenses, if any, at arbitration is granted. The Council's cross-motion for an order awarding it full reimbursement of its expenses and attorneys' fees in this action is denied. The Clerk of the Court is directed to enter judgment accordingly and dismiss this action.

SO ORDERED.