The **VALSPAR CORPORATION,**
Plaintiff,

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.**

**Civ. No. 14–1620 (RHK/SER).**

United States District Court,
D. Minnesota.

Signed Dec. 22, 2014.

Andrew J. Detherage, John P. Fischer, Barnes & Thornburg LLP, Indianapolis, IN, Christopher L. Lynch, Thomas C. Mielenhausen, Barnes & Thornburg LLP, Minneapolis, MN, for Plaintiff.

Dorothy Jaworski Paxton, Robert E. Salmon, Meagher & Geer, PLLP, Minneapolis, MN, Joseph A. Hinkhouse, Smita Mokshagundam, Hinkhouse Williams Walsh LLP, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

This matter is before the Court on the Motion of Plaintiff The Valspar Corporation ("Valspar") for a Preliminary Injunction (Doc. No. 55). For the reasons that follow, the Motion will be denied.[1]

## BACKGROUND

This is a declaratory-judgment action in which Valspar seeks a declaration that its insurer, Defendant National Union Insurance Company of Pittsburgh, Pa. ("National Union"), is obligated to reimburse it for sums expended in an underlying litigation commenced against it in this Court. Valspar alleges it spent, nearly $4 million defending that action, which National Union is obligated to pay (minus a $1 million deductible) under several insurance policies and related agreements it issued to Valspar between 2000 and 2002. When National Union failed to pay those costs, Valspar commenced this action in the Hennepin County District Court, which National Union removed to this Court on diversity grounds in May 2014.

Shortly after removal, National Union moved to stay or dismiss in favor of arbitration, citing an arbitration clause in a "payment agreement and addendum" (the "Payment Agreement") between the parties. In response, Valspar moved for leave to amend its Complaint to make clear it was not seeking reimbursement under the Payment Agreement; accordingly, it contended no obligation to arbitrate existed. In light of these developments, the Court stayed briefing on the Motion to Dismiss or Stay pending the Magistrate Judge's decision on amendment.[2]

In the meantime, however, the parties were privately discussing the prospective

---

1. The following constitutes the Court's findings of fact and conclusions of law under Federal Rules of Civil Procedure 52(a)(2) and 65.

2. Amendment strips an original complaint of legal effect, see, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir.2005); In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir.2000), rendering moot any then-pending motion to dismiss, e.g., Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir.2002).

arbitration. In particular, on July 7, 2014, National Union demanded that Valspar name an arbitrator within 30 days, in accordance with the Payment Agreement's terms. But because Valspar disputed that it was required to arbitrate, it stipulated with National Union that it would not be obligated to select an arbitrator until 30 days after the Court's decision on the insurer's Motion to Dismiss or Stay, in which the arbitrability issue would be decided.

The issue remained open until December 1, 2014, when Magistrate Judge Rau granted Valspar's Motion to Amend; Valspar filed its Amended Complaint that same day, removing all references to the Payment Agreement. As a result, the Court denied as moot National Union's Motion to Dismiss or Stay on December 2. But National Union contended that Valspar's Amended Complaint did not alter the legal landscape and that it was still required to arbitrate under the Payment Agreement. Hence, on December 15, 2014, National Union again moved to dismiss or stay in favor of arbitration. That Motion is scheduled to be heard on February 18, 2015.

Meanwhile, National Union wrote Valspar on December 15, 2014, and "reminded" it of its "obligation" to select an arbitrator by January 2, 2015—thirty days after the Court denied the original Motion to Dismiss or Stay—based on the parties' stipulation. Valspar responded by contacting National Union and requesting that it once again agree to extend the deadline for it to select an arbitrator until 30 days after the Court had ruled on the second Motion to Dismiss or Stay, but (according to Valspar) National Union refused to do so. Accordingly, Valspar filed the instant Motion, seeking to enjoin the arbitration proceedings, "including the purported January 2, 2015 deadline for Valspar to appoint an arbitrator, until following the entry of a Court Order substantively ruling on National Union's Motion to Dismiss."

## ANALYSIS

■ The Supreme Court recently emphasized that injunctive relief "is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). The Court typically considers four factors to determine whether such relief is warranted: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm in the absence of injunctive relief; (3) the balance between that harm and the harm injunctive relief would cause the non-movant; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). The Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir.1999). The "complete burden" of establishing the *Dataphase* factors weigh in favor of relief lies with the movant. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987); *accord, e.g., Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir.2003).

■ Here, however, the Court need not consider each of these factors, because Valspar's Motion falters on the irreparable-harm prong. "The basis of injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.1999) (*per curiam*) (quoting *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). Although likelihood of success and the public interest are important consider-

ations, "[e]ven when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm." *Roudachevski v. All–Am. Care Ctrs., Inc.,* 648 F.3d 701, 706 (8th Cir.2011). Hence, the lack of irreparable harm is "an independently sufficient ground upon which to deny" an injunction, *Watkins,* 346 F.3d at 844, and indeed, "in some cases, lack of irreparable injury is the factor that should begin and end the ... analysis," *Planned Parenthood Minn., N.D., S.D. v. Rounds,* 530 F.3d 724, 732 n. 5 (8th Cir.2008) (*en banc* ).[3] This is just such a case.

Valspar contends it will be irreparably harmed absent an injunction by being compelled to participate in arbitration when it (allegedly) never agreed to do so. True, some courts have "found irreparable injury where a party [was] compelled to arbitrate a claim it did not agree to arbitrate." *World Group Sec. v. Tiu,* No. CV 03–2609, 2003 WL 26119461, at \*7 (S.D.Cal. July 22, 2003) (collecting cases). In fact, some courts have *presumed* irreparable harm when a party was compelled to arbitrate an un-arbitrable dispute. *See, e.g., Paine-Webber, Inc. v. Hartmann,* 921 F.2d 507, 515 (3d Cir.1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

▮ A well-developed body of case law, however, adopts a contrary position. Indeed, being "forced" into arbitration in these circumstances causes nothing more than the reluctant party (here, Valspar) to expend time and resources on arbitration while concomitantly litigating the dispute. But as the Seventh Circuit noted nearly 30 years ago in *Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co.,* 779 F.2d 13, 15 (7th Cir.1985), "the fact that an order to arbitrate imposes a cost, the cost of the arbitration, whether it is an opportunity cost of time or an out-of-pocket expense for lawyers or witness fees or whatever, or both types of costs, does not show irreparable harm. Otherwise every order to arbitrate would be deemed to create irreparable harm." Other decisions are in accord. *See, e.g., Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union,* 22 F.3d 8, 14 (1st Cir.1994); *Woodlawn Cemetery v. Local 365, Cemetery Workers and Greens Attendants Union,* 930 F.2d 154, 157 (2d Cir.1991); *Camping Constr. Co. v. Dist. Council of Iron Workers,* 915 F.2d 1333, 1349 (9th Cir.1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury. That is simply not the case.").[4] In the undersigned's view, the

---

**3.** As the Supreme Court emphasized just a few months after *Planned Parenthood,* lack of irreparable harm *must* end the analysis. *Winter,* 555 U.S. at 22, 129 S.Ct. 365. Prior to *Winter,* some courts, including the Eighth Circuit, had held that a "possibility" of irreparable harm might be sufficient to support a preliminary injunction. *See Kan. City S. Transp. Co. v. Teamsters Local Union No. 41,* 126 F.3d 1059, 1066 (8th Cir.1997) (affirming preliminary injunction based upon "the possibility of irreparable harm if injunctive relief is not granted"). In *Winter,* the Supreme Court held that such a " 'possibility' standard is too lenient." 555 U.S. at 22, 129 S.Ct. 365. Instead, a party seeking preliminary injunctive

relief must show that "irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis in original).

**4.** Besides dividing courts across the country, the issue also has divided the Eighth Circuit, compare, *e.g., West v. Bergland,* 611 F.2d 710, 718 (8th Cir.1979) (costs incurred by compelled participation in administrative proceeding not irreparable harm), *with, e.g., McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.,* 105 F.3d 1192, 1194 (8th Cir. 1997) (injunction may issue to enjoin arbitration "even if the threatened irreparable injury to the other party is only the cost of defending the arbitration"), as well as judges in this

latter cases are more aptly applied here, for two key reasons.

First, it has long been recognized that financial injury is simply not the type of *irreparable* harm for which equity must intervene through the "extraordinary" use of injunctive relief. *See, e.g., Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.,* 61 F.3d 1347, 1355 (8th Cir.1995) ("[F]inancial hardship in and of itself is not enough to establish the irreparable harm ... that would justify a preliminary injunction."); *Packard Elevator v. ICC,* 782 F.2d 112, 115 (8th Cir.1986) ("It is ... well settled that economic loss does not, in and of itself, constitute irreparable harm.") (citations omitted); *see also, e.g., Wiepking v. Prudential–Bache Sec., Inc.,* 940 F.2d 996, 999 (6th Cir.1991) (being subjected to the expense of arbitral proceedings that ultimately are unenforceable is "unfortunate," but does not constitute irreparable harm); *Rollins, Inc. v. Garrett,* No. 6:05–CV–671, 2005 WL 2149293, at *3 (M.D.Fla. Sept. 6, 2005) ("The financial burden of arbitration does not constitute irreparable injury, as injuries measured in terms of time and money spent in the absence of an injunction are not deemed irreparable."); *Comptek Telecommcn's, Inc. v. IVD Corp.,* No. 94–CV–0827E, 1995 WL 495050, at *2 (W.D.N.Y. Aug. 1, 1995) ("[F]orcing a party to participate in a potentially unwarranted arbitration 'by itself imposes no [irreparable] injury to the resisting party, except perhaps in "extraordinarily rare" circumstances,' and ... '[t]he monetary cost of arbitration certainly does not impose such legally recognized irreparable harm.' ") (quoting *Emery Air Freight Corp. v. Local Union 295,* 786 F.2d 93, 100 (2d Cir.1986)). Indeed,

the Supreme Court has counseled that the expense of litigation does not amount to irreparable harm. *See, e.g., FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 244, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (citation omitted). This is true even if the sums expended in arbitration ultimately prove unrecoverable. *See, e.g., Standard Oil,* 449 U.S. at 244, 101 S.Ct. 488 ("Mere litigation expense, *even substantial and unrecoupable cost,* does not constitute irreparable injury.") (emphasis added) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974)).

Second, the Court does not perceive *any* harm, let alone *irreparable* harm, to Valspar absent immediate injunctive relief. At this time, Valspar is only being asked to name an arbitrator, hardly a Herculean task; an arbitration hearing, or even prehearing proceedings, likely will not take place for several months. It is difficult to conceive how Valspar will be harmed simply by naming an arbitrator, and possibly participating in some preliminary arbitration proceedings, before the Court opines on the arbitrability question. Indeed, there has been no suggestion Valspar would waive its right to challenge arbitrability of the parties' dispute simply by selecting an arbitrator, and the Court fully expects Valspar will make that selection with a full reservation of rights, including the right to assert the parties' dispute is non-arbitrable. As the Eleventh Circuit

District, *compare, e.g., Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon,* Civ. No. 11–889, 2011 WL 3294682, at *7 (D.Minn. Aug. 1, 2011) (Montgomery, J.) (irreparable harm),

with, *e.g., Fiend, Inc. v. Int'l Alliance of Theatrical Stage Employees,* 827 F.Supp.2d 1030, 1035 (D.Minn.2011) (Boylan, Chief M.J.) (no irreparable harm).

noted when reversing an injunction under similar circumstances:

We also note that the district court's conclusion regarding irreparable injury was patently wrong. Even if the defendants were permitted to proceed with arbitrating nonarbitrable claims, it is unclear how the plaintiffs would suffer any injury at all, much less irreparable injury. The plaintiffs would not have to participate in the defendants' arbitration proceedings. Even if the defendants obtained a default verdict against them, they would be unable to have it enforced in a district court because a district court is empowered to vacate arbitral awards where the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it. Consequently, while the defendant is free to initiate whatever private arbitration proceedings he wishes, a plaintiff need not be troubled by them because they are essentially legal nullities from the start.

Even if a plaintiff does decide to raise the justiciability issue before the arbitration panel, the time and expense he incurs in doing so simply does not constitute irreparable injury. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (quotation marks and citation omitted).

*Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1112 n. 20 (11th Cir.2004); *accord, e.g., AT & T Broadband, LLC. v. Int'l Bhd. of Elec. Workers,* 317 F.3d 758, 762 (7th Cir.2003) ("If AT & T loses in the arbitration, the union will seek to enforce its victory; AT & T can defend on the theory that it had not agreed to arbitrate this kind of dispute.... All AT & T could lose ... is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury.").

Valspar contends it will "lose its right to have [its] claim adjudicated in a court of law, rather than an arbitral forum to whose jurisdiction it has not consented," if forced to participate in arbitration. But even in the unlikely event the arbitration proceedings somehow *concluded* before this Court ruled on arbitrability, the underlying award would still be subject to review in this Court. *See* 9 U.S.C. § 10(a)(4); *Kalb v. Quixtar, Inc.,* No. 3:07–cv–1061, 2008 WL 879406, at *7 (M.D.Fla. Mar. 28, 2008) ("If it is later determined that the claims are not arbitrable, any arbitration award may be vacated as exceeding the scope of the arbitration agreement. Thus, there will be no harm to Plaintiffs other than the expenditure of money and time."). Regardless, the "harm suffered in having to litigate a dispute in a forum not of one's choosing is no different from the harm suffered after having a motion to dismiss or motion for summary judgment denied, or having one's case transferred or remanded to a different court. In none of these situations are the harms associated with having to proceed in the forum usually considered 'irreparable harm.'" *Rollins, Inc.,* 2005 WL 2149293, at *4.

## CONCLUSION

As in *Planned Parenthood,* the absence of irreparable harm is the beginning and end of the analysis. Because Valspar has not satisfied its "complete burden" of showing it will be irreparably harmed absent immediate injunctive relief, *Gelco Corp.,* 811 F.2d at 418, and based on all the files, records, and proceedings herein, **IT IS ORDERED** that Valspar's Motion

for a Preliminary Injunction (Doc. No. 55) is **DENIED**.

